STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO: CV-10-132
                                                  *RAC - Cum 9/28/2010*

                                                                                    ✓

CHRISTINE S. ANGELL,

                 Plaintiff,

        v.                                        **ORDER ON DEFENDANTS'**
                                                  **MOTIONS FOR JUDGMENT ON**
RENALD C. HALLEE                                  **THE PLEADINGS**

and

THE ROMAN CATHOLIC BISHOP
OF PORTLAND,

                 Defendants                       STATE OF MAINE
                                                  Cumberland, ss. Clerk's Office

                                                  SEP 28 2010

                                                  RECEIVED

        Plaintiff Christine S. Angell filed this action against defendants Fr. Renald

C. Hallee and the Roman Catholic Bishop of Portland for sexual abuse that

allegedly occurred between 1970 and 1973. The defendants contend that the

statute of limitations bars her claims and move for judgment on the pleadings.

## BACKGROUND

        Ms. Angell was born on November 16, 1961. (Compl. ¶ 1.) Defendant

Hallee was ordained a Roman Catholic priest in June 1970, and the Roman

Catholic Bishop of Portland assigned him to St. John's Parish in Bangor, Maine.

(Compl. ¶¶ 3–4, 14.) He stayed there until 1973. (Compl. ¶ 14.) Ms. Angell's

family resided in Bangor and was devoutly Roman Catholic. (Compl. ¶¶ 9, 11.)

She was a parishioner at St. John's, and attended Roman Catholic schools

through the twelfth grade. (Compl. ¶¶ 6, 10.) Her family knew Fr. Hallee and

would host him as a guest in their home. (Compl. ¶ 12.)

1

The plaintiff alleges that Fr. Hallee repeatedly sexually abused her during her childhood. (Compl. ¶ 15.) Ms. Angell claims that between 1970 and 1973, Fr. Hallee performed numerous nonconsensual sexual acts on her including but not limited to digital penetration of her vagina, kissing her on the lips, and fondling her both over and under her clothing. (Compl. ¶ 16.) She alleges that the Bishop knew or should have known about this abuse and failed to take appropriate action, going so far as to suppress any information about its occurrence. (Compl. ¶ 68.)

Ms. Angell turned eighteen years old on November 16, 1979. (*See* Compl. ¶ 1.) She does not allege that she had forgotten or repressed the abuse; been in military service; suffered from mental illness; been imprisoned; or experienced any other similar condition that might toll the statute of limitations. *See* 50 U.S.C. app. § 526(a) (Servicemember's Civil Relief Act); 14 M.R.S. § 853 (tolling provision for persons under disability).

The plaintiff filed her eleven-count complaint on March 25, 2010. She accuses Fr. Hallee of negligence; sexual assault and battery; invasion of privacy; intentional infliction of emotional distress; negligent infliction of emotional distress; clergy malpractice; and breach of fiduciary duty. She also accuses both Fr. Hallee and the Bishop of fraudulent concealment, and seeks punitive damages from each. The defendants deny Ms. Angell's claims and argue that her claims are barred by the statute of limitations. The plaintiff counters that fraud or Fr. Hallee's absence from the state might have tolled that statute, and has responded with motions to stay the proceedings and permit discovery.

2

## DISCUSSION

A Rule 12(c) motion for judgment on the pleadings is the functional equivalent of a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Chiapetta v. Clark Associates*, 521 A.2d 697, 700 (Me. 1987) (citing 1 Field, McKusick & Wroth, *Maine Civil Practice* § 12.14 at 253 (2d ed. 1970)). These motions test "the legal sufficiency of the complaint." *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994). The court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* Dismissal is appropriate "when it appears 'beyond doubt that a plaintiff is entitled to no relief under any set of facts that [she] might prove in support of [her] claim.'" *Id.* (quoting *Hall v. Bd. of Envtl. Protection*, 498 A.2d 260, 266 (Me. 1985)). The motion is only converted into one for summary judgment when factual "matters outside the pleading[s] are presented to and not excluded by the court." M.R. Civ. P. 12(b)–(c).

Currently there is no limitations period for actions based upon sexual acts toward minors. This is a recent development, however, and is very different from the statute of limitations applicable to such actions when Fr. Hallee allegedly abused Ms. Angell in the 1970s. Over the past thirty years the statute has undergone an incremental, yet radical transformation. In the 1970s and early 1980s, sexual assaults against minors were subject to the two-year statute of limitations applicable to claims for assault and battery. 14 M.R.S. § 753 (1980); *Harkness v. Fitzgerald*, 1997 ME 207, ¶ 4 n.1, 701 A.2d 370, 372 n.1; *McAfee*, 637 A.2d at 465. Other civil actions were governed by the general six-year statute of limitations, and no cause of action would accrue until a person's eighteenth

3

birthday. *Harkness*, 1997 ME 207, ¶ 4 n.1, 701 A.2d at 372 n.1; *McAfee*, 637 A.2d at

465; 14 M.R.S. §§ 752 (six-year limitation), 853 (tolled until age of majority) (1980);

1 M.R.S. § 72(11)–(11-C) (1980) (eighteen is age of majority).

While this general statutory scheme remains in place today, an important

exception was added in 1985. That year,

> the Maine legislature enacted 14 M.R.S.A. § 752-C, effective
> September 19, 1985, providing:

>> Actions based upon sexual intercourse or a sexual
>> act, as defined in Title 17-A, chapter 11, with a person
>> under the age of majority shall be commenced within
>> 6 years after the cause of action accrues.

> In 1989, the legislature amended § 752-C, effective
> September 30, 1989, adding a discovery period:

>> Actions based upon sexual intercourse or a sexual
>> act, as defined in Title 17-A, chapter 11, with a person
>> under the age of majority shall be commenced within
>> 6 years after the cause of action accrues, or within 3
>> years of the time the person discovers or reasonably
>> should have discovered the harm, whichever occurs
>> later.

> In 1991, § 752-C was again amended:

>> Actions based upon sexual intercourse or a sexual
>> act, as defined in Title 17-A, chapter 11, with a person
>> under the age of majority must be commenced within
>> 12 years after the cause of action accrues, or within 6
>> years of the time the person discovers or reasonably
>> should have discovered the harm, whichever occurs
>> later.

> As to the application of these changes the amendments
> provided:

>> Sec. 2. Application. This Act applies to the
>> following actions based upon sexual intercourse or a
>> sexual act with a person under the age of majority:
>> 1. All actions based upon sexual intercourse or a
>> sexual act occurring after the effective date of this Act;
>> and

4

> 2. All actions for which the claim has not yet been barred by the previous statute of limitations in force on the effective date of this Act.

*Boyden v. Michaud*, 2008 Me. Super. LEXIS 88, ** 3–5 (May 14, 2008) (Jabar, J.) (quoting P.L. 1985, ch. 343, § 1; P.L 1989, ch. 292; P.L. 1991, ch. 551, §§ 1–2). In 1994, the Law Court determined that the plain language of the 1991 amendment precluded the creation of "a judicially crafted discovery rule applicable to the predecessor of *section 752-C.*" *McAfee*, 637 A.2d at 466 (emphasis in original); *Nuccio v. Nuccio*, 673 A.2d 1331, 1335 (Me. 1996) (no discovery rule for causes of action extinguished prior to 1991, even in cases of suppressed memory).

> Finally in 1999, effective August 11, 2000, the legislature removed the statute of limitations, such that today 14 M.R.S.A. § 752-C reads:

> > § 752-C Sexual acts towards minors
> > 1. No limitation. Actions based upon sexual acts toward minors may be commenced at any time.
> > 2. Sexual acts toward minors defined. As used in this section, "sexual acts toward minors" means the following acts that are committed against or engaged in with a person under the age of majority;
> > > A. Sexual act, as defined in Title 17-A, section 251, subsection 1, paragraph C; or
> > > B. Sexual contact, as defined in Title 17-A, section 251, subsection 1, paragraph D.

> > Sec. 2. Application. This Act applies to the following actions based upon a sexual act or sexual contact occurring on or after the effective date of this Act; and
> > 1. All actions based on a sexual act or sexual contact occurring on or after the effective date of this Act; and
> > 2. All actions for which the claim has not yet been barred by the previous statute of limitations in force on the effective date of this Act.

*Boyden*, 2008 Me. Super. LEXIS 88, ** 3–5 (May 14, 2008) (Jabar, J.) (quoting P.L. 1999, ch. 639, §§ 1–2).[1]

The question is whether Ms. Angell's claims are time-barred, or are somehow preserved by section 752-C. The court will assume that section 752-C would apply to all of her claims against both Fr. Hallee and the Bishop because they are "based upon sexual acts." *See Boyden*, 2008 Me. Super. LEXIS 88, ** 11–17 (May 14, 2008) (Jabar, J.) (noting disagreement among jurisdictions and ultimately interpreting "based upon" to be synonymous with "arising from"). The alleged abuse occurred between 1970 and 1973, when Ms. Angell was between the ages of eight and twelve years old. Because she was a minor, section 853 tolled the statute of limitations until her eighteenth birthday, November 16, 1979. At that time the relevant limitations periods were two years for her assault and battery claim, and six years for all other civil claims. On the face of the pleadings, Ms. Angell's assault and battery claim became untimely on November 16, 1981. The statute of limitations for her other claims was functionally unaffected by the creation of section 752-C on September 19, 1985, and they became time-barred on November 16, 1985.

Ms. Angell does not directly dispute the above. Instead, she argues that the court should allow to her engage in discovery because there *might* be evidence that the limitations period was tolled between 1979 and 1985. She first contends that the statute of limitations against Fr. Hallee was tolled because he now lives out of state. When a person resides out of state after a cause of action accrues against him, the statute of limitations is tolled for the duration of his absence. 14 M.R.S. § 866 (2009). Fr. Hallee is currently a resident of

---

[1] The statute was also amended in 1993, but that amendment did not alter the limitations period and is not relevant to this case. *See* P.L. 1993, ch. 176, § 1.

Massachusetts, but this has no bearing on his whereabouts during the thirty years between Ms. Angell's eighteenth birthday and her commencement of this action. While the court does give the plaintiff the benefit of all reasonable inferences on a motion for judgment on the pleadings, *McAfee*, 637 A.2d at 465, it is pure speculation to say that the defendant's current residency might have tolled a statute of limitations three decades earlier. Ms. Angell's complaint does not allege that Fr. Hallee moved out of Maine prior to the expiration of her actions in 1981 and 1985, nor has she offered any extrinsic evidence of the same.

Ms. Angell bases her second argument on fraud. The statute of limitations for actions in fraud or actions that are fraudulently concealed is tolled until the cause of action is discovered, and then the limitations period is six years. 14 M.R.S. § 859 (2009). Ms. Angell alleges that Fr. Hallee and the Bishop wrongfully concealed the abuse he perpetrated against her, preventing her from receiving aid. (Compl. ¶¶ 61, 66, 68.) She does not, however, allege that she forgot the abuse occurred, repressed the memories, was deceived about its nature, or was otherwise unable to discover that she herself had been abused. The plaintiff has thus failed to generate any question of whether section 859 applies in this case. On the face of the pleadings, it does not.

Ms. Angell does state in her opposition that she expects to be able to show that she was unable to comprehend the significance of the abuse as a child and later repressed her memories until the mid-1990s. None of this appears in her complaint, making it irrelevant to a motion for judgment on the pleadings. She has also failed to produce any actual evidence that could convert the motion into one for summary judgment. Finally, the Law Court addressed these issues in *McAfee v. Cole* and found that memory repression does not toll the statute of

7

limitations on actions that expired before the Legislature created a discovery rule in 1991. 637 A.2d at 466. While it is conceivable that a combination of memory loss and fraud might combine to toll the statute, *id.* at 466–67, Ms. Angell does not raise the issue of memory loss in her complaint.

The plaintiff's complaint is facially deficient. She has not alleged any set of facts or circumstances under which her claims could be timely. Notably, Ms. Angell has not sought leave to amend her complaint. Instead, she has asked the court to ignore both the deficiency and the defendant's motions while she searches for evidence that might preserve her claims. This course of action would be entirely contrary to the purpose of Rules 12(b)(6) and 12(c).

**The entry is:**

The plaintiff's motions to stay proceedings and permit discovery are denied. The court grants the defendants' motions for judgment on the pleadings, and judgment will be entered for the defendants on all counts.

DATE: September 28, 2010

Roland A. Cole
Justice, Superior Court

8

----------------------------------------------------------------------------------

01 0000000402          DETROY, PETER
    415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600
    F      RENALD C HALLEE                              DEF      RTND    04/20/2010

02 0000000300          LIPMAN, SUMNER
    227 WATER STREET PO BOX 1051 AUGUSTA ME 04332-1051
    F      CHRISTINE S ANGELL                           PL       RTND    03/25/2010

03 0000001245          PETRUCCELLI, GERALD F
    50 MONUMENT SQUARE PO BOX 17555 PORTLAND ME 04112-8555
    F      ROMAN CATHOLIC BISHOP OF PORTLAND            PII      RTND    04/16/2010


*More Attorneys*

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-10-132
/3AC- CUM - 6/26/2013

CHRISTINE S. ANGELL
Plaintiff

STATE OF MAINE
Cumberland, ss, Clerk's Office

RECEIVED

ORDER ON
DEFENDANT'S MOTION
FOR SUMMARY
JUDGMENT

v.

RENALD C. HALLEE et al.,
Defendants

Defendant Renald Hallee moves for summary judgment on the grounds that

Plaintiff Christine Angell's complaint is untimely.

FACTS

Plaintiff alleges that the Defendant sexually abused her between 1970-1973.

Plaintiff was between 8 and 12 years old at the time, and Defendant was a priest for the

Roman Catholic Church in Bangor. Plaintiff filed the complaint on March 25, 2010.

The motion for summary judgment argues that Plaintiff's complaint is time

barred. It is agreed that the statute of limitations on any cause of action was tolled until

Plaintiff's 18th birthday on November 16, 1979. 14 M.R.S.A. § 853. Thus, barring any

tolling, the 2-year statute of limitations for sexual assault and battery would have expired

on November 16, 1981, 14 M.R.S.A. § 753, and any remaining claims with 6-year

statutes of limitations would have expired on November 16, 1985.[1] Because Defendant

---

[1] Thus, the relevant time period is November 1979 through November 1981 for the
sexual assault/battery claim, and November 1979 through November 1985 for any others.

1

was living out of state during this time, the issue is whether Defendant has met his burden of proving that the statute of limitations was *not* tolled pursuant to 14 M.R.S.A. § 866 and the Law Court's holding in *Angell v. Hallee*, 2012 ME 10, 36 A.3d 922.

Defendant served in Bangor during the time of the alleged abuse. In September 1973, Defendant was transferred to Saint Louis's parish in Fort Kent. Plaintiff argues that the transfer was never announced or publicized by the church, but, in reply, Defendant produced several newspaper articles and/or news releases that announced the move. Plaintiff alleges that her father found out about the abuse and asked where Defendant had gone, and no one would tell him. Defendant left Fort Kent in 1977, and spent a short time at his parents' home in Waterville and the "House of Affirmation" facility in Whitinsville, Massachusetts. Defendant then lived in Worcester, Massachusetts and Woburn, Massachusetts for brief periods. Defendant last served in the active ministry in 1977.

From March 1979 through February 1983, Defendant lived in Somerville, Massachusetts. Defendant got married in February 1983. From March 1983 through March 1985, Defendant lived in North Reading, Massachusetts. In March 1985, Defendant and his wife moved to Billerica, Massachusetts and they continue to live there to this day. Defendant was always listed on public resident lists and/or phone books.

---

With respect to the former, Plaintiff's counsel argues that Defendant has the burden of showing that he was amenable to service for the time period of 1981-2000. In 2000, the Legislature eliminated the statute of limitations for claims involving sexual acts towards minors. However, if the statute of limitations was not tolled between 1979-1981 (2 years for the sexual assault/battery claim), then the cause of action expired in November 1981 and cannot be revived.

2

Defendant worked in the Lexington Public School System from 1978 until his retirement in 2007.

In and around the applicable time period, the Portland Diocese communicated with both the Defendant and the Vatican regarding the Defendant's request for laicization (the process of releasing one from the vows of priesthood).[2] Sister Rita-Mae Bissonnette has worked in the chancery office of the Diocese since 1974. Sister Bissonnette admits that she cannot be certain whether the Diocese always had a current address from Defendant during the relevant period. However, she attests that there was never a time that the Diocese would have been unable to locate the Defendant because members of his family were well known to the Diocese and there has never been any difficulty in securing a current address for the Defendant. Defendant was in touch with his family and they knew where he was at all relevant times. Plaintiff does not dispute that intermittent correspondence took place between the Diocese and Defendant, nor does she deny that Defendant's family was known within the Diocese. Neither Plaintiff, nor anyone on her behalf, attempted to locate Defendant during the applicable period.

DISCUSSION

The tolling provision in question provides: "If a person is absent from and resides out of the State, after a cause of action has accrued against him, the time of his absence from the State shall not be taken as a part of the time limited for the commencement of the action." 14 M.R.S.A. § 866.

---

[2] In June and July 1978, and again in July 1980 and April 1982, Defendant attests that he received correspondence from the Diocese of Portland regarding his laicization. Defendant does not attach the letters to his affidavit, but Plaintiff admits these facts. Sister Bissonnette attests to and produced three communications involving the Defendant, the earliest dated September 16, 1981.

3

When this case first went up on appeal, the Law Court held that § 866 does not toll the statute of limitations "for any portion of the period during which the plaintiff *could, through reasonable effort*, find and serve the defendant by any means other than publication." *Angell v. Hallee*, 2012 ME 10, ¶ 9, 36 A.3d 922 (emphasis added).[3] Furthermore, the Law Court held that once the statute of limitations affirmative defense is generated, "the burden of proof remains on the defendant to support all aspects of his affirmative defense," including the lack of tolling. *Id.* ¶ 10. Thus, the burden is on Defendant to demonstrate that Plaintiff could have located him with reasonable effort and had him served. *Id.* ¶ 11.

The Court recognizes that more than a reasonable effort may have been necessary to locate someone based solely on his public existence in the early 1980s, even if he was not hiding. With no known contacts, and without the benefit of widely available Internet access and social media, Plaintiff would arguably have had to scour endless public records across the nation to locate the Defendant.

However, a "reasonable effort" and the logical first step in locating Defendant would have been to contact the Diocese, the nerve center for the Catholic church of Maine, to obtain information about the Defendant. Even if the Diocese did not have Defendant's current address readily available, people within the Diocese would have

___

[3] Plaintiff relies heavily on *Patten v. Milam*, 480 A.2d 774 (Me. 1984). Before the Law Court adopted the "reasonable effort" standard in *Angell*, it considered a similar approach from other jurisdictions in which tolling depends on whether a party was "amenable to service of process." *Id.* at 777. In that case, the defendant moved to Texas during the period of limitations. He continued to own his house in Maine, but his family did not live there and they followed him to Texas. The Law Court held that the plaintiff could not reasonably have known defendant's whereabouts. *Id. Patten* is of limited use here because the decision does not involve any other facts, such as the possibility of contacting an employer or other known contacts in Maine.

4

been able to obtain his address through contact with his family. It would even have been reasonable to make multiple phone calls or visits to the Diocese in order to seek the information if the first person Plaintiff spoke to was not helpful.

Plaintiff argues that the Diocese would have withheld the Defendant's whereabouts in order to protect the Church, but any such argument is speculative rather than factual. Because the inquiry is whether the Plaintiff hypothetically "could, through reasonable effort," have located and served the Defendant, complete certainty is not possible or required. The Law Court's holding in *Angell* does not include any requirement that the Plaintiff actually have made any attempt to locate an out-of-state defendant, so the Court can only decide what could likely have been accomplished with a reasonable effort. Thus, based on the fact that members within the Diocese had the Defendant's contact information or the ability to obtain that information, in combination with the absence of any facts showing the Plaintiff attempted to contact the Diocese and was thwarted, the Court concludes that the Plaintiff would, with reasonable effort, have been able to locate and serve the Defendant.

The entry will be:

The Court GRANTS Defendant's motion for summary judgment.

_____Jun 26, 2013_____
DATE

_____
SUPERIOR COURT JUSTICE

5

CHRISTINE S ANGELL VS RENALD C HALLEE ET AL
UTN:AOCSsr  -2010-0029394                        CASE #:PORSC-CV-2010-00132
---------------------------------------------------------------------------

01 0000000402  ATTORNEY DETROY, PETER
   415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600
   F    RENALD C HALLEE                          DEF       RTND    04/20/2010

02 0000000300  ATTORNEY LIPMAN, SUMNER
   227 WATER STREET PO BOX 1051 AUGUSTA ME 04332-1051
   F    CHRISTINE S ANGELL                       PL        RTND    03/25/2010

CHRISTINE S ANGELL VS RENALD C HALLEE ET AL
UTN:AOCSsr  -2010-0029394                        CASE #:PORSC-CV-2010-00132
---------------------------------------------------------------------------

REPRESENTATION TYPE

01 0000000402  ATTORNEY DETROY, PETER
   415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600
   F    RENALD C HALLEE                          DEF       RTND    04/20/2010

02 0000000300  ATTORNEY LIPMAN, SUMNER
   227 WATER STREET PO BOX 1051 AUGUSTA ME 04332-1051
   F    CHRISTINE S ANGELL                       PL        RTND    03/25/2010